IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs August 5, 2003

## ANTONIO VANTRESS BROWN v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Madison County**
**No. C02-161     Roy B. Morgan, Jr., Judge**

---

**No. W2002-02256-CCA-R3-PC  - Filed September 19, 2003**

---

The Petitioner, Antonio Vantress Brown,[1] appeals the denial of his petition for post-conviction relief. He originally pled guilty to various offenses and received an effective sentence of thirty years. On appeal, the Petitioner contends: (1) he received ineffective assistance of counsel in entering his guilty pleas; and (2) his guilty pleas were not knowingly and voluntarily entered. Upon review of the record and the applicable law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Michael D. Rasnake, Jackson, Tennessee, for the appellant, Antonio Vantress Brown.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Jennifer L. Bledsoe, Assistant Attorney General; James G. Woodall, District Attorney General; and Jody S. Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The facts, to which the Petitioner agreed at the time he entered his guilty pleas, were as follows. On January 14, 2000, the Petitioner entered the ARA Discount Tobacco Store in Madison County, Tennessee, pointed a gun at Glen Arnaught, demanded money, and shot at Arnaught intending to kill him. The Petitioner then fled to Tonya Swain's residence where he remained without her consent. When police officers attempted to arrest him, he used force to resist their efforts to take him into custody. The Petitioner pled guilty to attempted aggravated robbery, attempted first degree murder, aggravated criminal trespass, and resisting arrest. Pursuant to the plea agreement, the Petitioner received an effective sentence of thirty years.

---

[1]In various pleadings, the Petitioner's name also appears as "Antonio Vantreese Brown." However, we list the Petitioner's name as it appears in his petition for post-conviction relief.

# I. POST-CONVICTION RELIEF HEARING

During the post-conviction relief hearing, the Petitioner testified he met with defense counsel and discussed his case only once for approximately forty-five minutes on the day in which he entered the guilty pleas. He stated he informed defense counsel that he wanted a trial, but defense counsel advised him against it due to his prior record. The Petitioner acknowledged he had four prior aggravated burglary convictions, two prior burglary convictions, and four prior theft convictions. He stated defense counsel informed him that if he testified at trial, he would likely be questioned regarding his prior record, and his record would likely have a negative impact on the jury. The Petitioner testified he was also aware that his prior record would enhance his sentence if he were convicted at trial. He stated he told defense counsel that he still wished to testify at trial.

The Petitioner testified that despite his requests, defense counsel failed to provide him with a copy of the State's discovery materials. He stated he also informed defense counsel that a third party had committed the offenses, but defense counsel failed to investigate this possible defense. The Petitioner testified he was merely a passenger in the vehicle of co-defendant Christopher March and never exited the vehicle while at the store.

The Petitioner testified he and defense counsel never discussed the State's witnesses, but defense counsel informed him that his co-defendant planned to testify against him at trial. After he entered the pleas, the Petitioner learned that Tonya Swain, an ex-girlfriend, also planned to testify against him but later decided against it. He stated an inmate at the county jail asserted he overheard the Petitioner and his cousin discussing the case. The Petitioner testified he requested defense counsel interview the inmate, but defense counsel failed to do so.

The Petitioner testified that while he was in custody, he was sent to Pathways and Western State for a mental health examination because he was hallucinating and hearing voices. The Petitioner was placed on medication for "hearing voices," depression, and high blood pressure. He acknowledged that according to the report issued by Western State, the doctors found he was competent to stand trial and there was a 99.4% probability the Petitioner was faking his symptoms.

According to the Petitioner, after his mental health examination was completed, he was transferred to the Department of Correction. He was later transferred back to the county jail for two days, during which time he entered his pleas. The Petitioner stated that during those two days, he did not receive his medication. As a result, he was unable to concentrate and the voices returned. He stated he informed defense counsel that he was required to take medication. The Petitioner maintained that the lack of medication interfered with his ability to adequately understand the plea proceedings.

Defense counsel testified he was appointed to represent the Petitioner in November 2000. He stated he met with the Petitioner on four occasions for a total of approximately four hours. On November 17, 2000, defense counsel received a plea offer from the State and met with the Petitioner

three days later to discuss the offer. Defense counsel testified the State initially offered a forty-five-year sentence, which the Petitioner believed to be excessive.

Defense counsel testified he received discovery materials from the State on November 22, 2000. He then delivered a copy of the discovery materials to the county jail in order to allow the Petitioner to review the materials before their next meeting. Defense counsel stated that after the plea hearing, he provided the Petitioner with an additional copy of the discovery materials.

Defense counsel testified he met with the Petitioner on January 15, 2001, at the county jail, during which time they discussed the discovery materials, the State's evidence, and the Petitioner's possible sentence if convicted at trial. He also informed the Petitioner that if he testified at trial, the jury would likely hear about his prior criminal record. Defense counsel was aware the State had filed a Notice of Enhancement Factors; Tonya Swain had given a statement to the police claiming the Petitioner had confessed to her; the co-defendant planned to testify against the Petitioner at trial; and the victims at the store described the Petitioner "to a tee."

Defense counsel testified he did not interview the State's witnesses because he had copies of their statements. He stated he also had a letter from Gerald Jackson, a former inmate at the county jail, who claimed to have overheard the Petitioner threaten to kill the co-defendant if he testified at trial. He further stated he was unable to locate Jackson. Defense counsel opined that due to the State's strong evidence against the Petitioner and Jackson's questionable credibility, his statement would not have been critical to the case.

Defense counsel testified he did not insist the Petitioner enter the guilty pleas, and he would have taken the case to trial if the Petitioner had requested. He stated he explained to the Petitioner that the State's case was "exceedingly strong" and his chances at trial were poor. He further stated the Petitioner never informed him that a third party had committed the offenses.

Defense counsel testified he was provided with a copy of the Petitioner's mental health evaluation report, which had been completed prior to his appointment to the case. He stated he was unaware that the Petitioner was taking medication. Defense counsel testified that during their meetings, the Petitioner was "lucid," and he made no observations leading him to believe the Petitioner was being denied medication.

## II. POST-CONVICTION COURT'S FINDINGS

In its written order denying the Petitioner's post-conviction relief petition, the post-conviction court found the Petitioner failed to establish defense counsel's performance was deficient and that any alleged deficiency resulted in prejudice. The post-conviction court noted the trial court and defense counsel took "extraordinary measures" to ensure the Petitioner was competent. It further noted that according to the Petitioner's mental health evaluation report, he was found to be competent to stand trial and was found to be "faking" to some degree his inability to understand the trial process. The post-conviction court also noted that prior to accepting the pleas, the trial court

ensured the Petitioner understood the charges against him and the consequences of his pleas. The post-conviction court then found that upon being advised of his rights, the Petitioner knowingly and voluntarily entered the guilty pleas.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

The Petitioner contends he was provided with ineffective assistance of counsel in entering his guilty pleas. Specifically, he maintains defense counsel failed to adequately confer with him and prepare his case. We disagree.

### A. Standard

When a claim of ineffective assistance of counsel is made under the Sixth Amendment, the petitioner bears the burden of proving (1) that counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings were fundamentally unfair. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court required that the services be rendered within the range of competence demanded of attorneys in criminal cases. When a petitioner claims ineffective assistance of counsel in relation to a guilty plea, the petitioner must prove that counsel performed deficiently, and, but for counsel's errors, petitioner would not have pled guilty but would have, instead, insisted upon going to trial. Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985).

The petitioner bears the burden of proving by clear and convincing evidence the factual allegations that would entitle petitioner to relief. Tenn. Code Ann. § 40-30-210(f). This court is bound by the post-conviction court's findings of fact unless the evidence preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456 -57 (Tenn. 2001).

### B. Analysis

The Petitioner alleges defense counsel failed to adequately confer with him in preparing for his case and failed to discuss the testimony of the State's witnesses with him. He maintains defense counsel met with him prior to the plea hearing for a total of forty-five minutes.

However, in its order denying the Petitioner's post-conviction relief petition, the post-conviction court implicitly accredited the testimony of defense counsel, who stated he met with the Petitioner on four separate occasions prior to the plea hearing for a total of four hours. Defense counsel testified that during the meetings, he and the Petitioner discussed the plea agreement, the State's discovery materials, the statements of the witnesses, the Petitioner's prior criminal record, its effect on his decision to testify, and its possible effect in enhancing his sentence.

In support of his argument, the Petitioner notes defense counsel admitted he did not interview the State's witnesses. However, defense counsel testified he had the witnesses' prior statements, and

he was unable to locate Gerald Jackson, the inmate. He opined Jackson's testimony would not have been critical to the State's case due to the State's strong evidence against the Petitioner.

Furthermore, no potential witness testified at the post-conviction relief hearing. When a petitioner alleges his defense counsel was ineffective in failing to interview certain witnesses, the petitioner is required to offer the testimony of those witnesses at the post-conviction relief hearing in order to allow the post-conviction court to consider the nature of their testimony. See Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Therefore, the Petitioner did not establish he was prejudiced by defense counsel's failure to interview witnesses.

Accordingly, we conclude the Petitioner failed to establish defense counsel's performance was deficient and that, but for defense counsel's alleged deficiencies, he would not have pled guilty and would have insisted on going to trial.

## IV. VOLUNTARINESS OF GUILTY PLEAS

The Petitioner also contends his plea was involuntary and unknowing. Our state supreme court set forth the following standards:

> The cases of Boykin v. Alabama and State v. Mackey are the landmark constitutional cases for analyses of guilty pleas. Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969) (federal standard); State v. Mackey, 553 S.W.2d 337 (Tenn. 1977) (state standard). In Boykin, the United States Supreme Court held that before a trial judge can accept a guilty plea, there must be an affirmative showing that it was given intelligently and voluntarily. Id. at 242, 89 S. Ct. at 1711, 23 L. Ed. 2d at 279. In order to find that the plea was entered "intelligently" or "voluntarily," the court must "canvass[ ] the matter with the accused to make sure he has a full understanding of *what the plea connotes* and *of its consequences.*" Id. at 244, 89 S. Ct. at 1712, 23 L. Ed. 2d at 280 (emphasis added).

State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999).

The Petitioner testified he heard voices and suffered from hallucinations, which he treated through medication. He maintains that when he entered the guilty pleas, he had not taken his medication; as a result, he was unable to concentrate, and the voices returned. The Petitioner contends he, therefore, lacked the mental capacity to knowingly and voluntarily enter the pleas.

However, the Petitioner's mental health evaluation report from Western State, which was admitted into evidence during the post-conviction relief hearing, indicates there was a 99.4% chance the Petitioner was malingering. Furthermore, even if the Petitioner had not taken his medication on the day of the plea hearing, no evidence was presented, other than the Petitioner's testimony, regarding

its effect on his ability to enter a knowing and voluntary plea.[2] On the contrary, defense counsel testified the Petitioner appeared to be "lucid" and understood the plea agreement.

During the plea hearing, the Petitioner stated he was not under the influence of alcohol, narcotics, or any mind-altering drugs. He further stated he understood the offenses to which he was pleading guilty and their applicable sentencing ranges. The Petitioner indicated he understood that by entering the pleas, he was waiving his right to a jury trial, his right to confront witnesses, his right to testify, and his right to a direct appeal. The Petitioner also stated he had not been forced or pressured into entering the pleas.

During the plea hearing, defense counsel informed the trial court that the Petitioner had been cooperative; that he believed the Petitioner understood what he was doing; and that the Petitioner was entering the pleas based upon "full knowledge of the facts." The Petitioner affirmed defense counsel's statements were true.

Based on the circumstances, we conclude the post-conviction court properly determined the Petitioner's guilty pleas were knowingly and voluntarily entered.

## V. CONCLUSION

We conclude the evidence does not preponderate against the trial court's finding that Petitioner's guilty pleas were knowingly and voluntarily entered with the effective assistance of counsel. Accordingly, we affirm the judgment of the post-conviction court.

_____
ROBERT W. WEDEMEYER, JUDGE

---

[2]Although the Petitioner's medical records from the county jail are included in the appellate record, there is no indication that they were entered as an exhibit or referred to during the post-conviction relief hearing. Regardless, the information contained in the record does not preponderate against the trial court's findings of fact.